JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

10-4129

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Centennial School District

**(b)** County of Residence of First Listed Plaintiff: **Bucks**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Levin Legal Group, P.C., 1301 Masons Mill Business Park, 1800 Byberry Rd., Huntingdon Valley, PA 19006, 215-938-6378

## DEFENDANTS
Sean D., by and through his parents and natural guardians, Daniel and Lori D.

County of Residence of First Listed Defendant: **Montgomery**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Manali Arora, Esquire, 50 East Court Street, Doylestown, PA 18901

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
20 U.S.C. §1401
Brief description of cause:
Appeal from Special Education Hearing Officer Decision

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE: 07/16/2010
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AUG 16 2010

**PD**

# UNITED STATES DISTRICT COURT

10-CV-4129

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

**10  4129**

Address of Plaintiff: Centennial School District, 433 Centennial Road, Warminster, PA 18974

Address of Defendant: Defendants, Sean D., Daniel and Lori D., 125 Fairhill Road, Huntingdon Valley, PA 19006

Place of Accident, Incident or Transaction: Bucks County _____ (*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No **X**

Does this case involve multidistrict litigation possibilities?   Yes☐   No **X**

*RELATED CASE, IF ANY:*
Case Number: _____  Judge _____
Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐   No **X**
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☐   No **X**
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No **X**
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐   No **X**

CIVIL: (Place X in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. **X** Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Anne E. Hendricks, counsel of record do hereby certify:

**X** Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

**X** Relief other than monetary damages is sought.

DATE: 8/16/10   _____Attorney-at-Law_____   55904 Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/16/10   _____Attorney-at-Law_____   55904 Attorney I.D.#

CIV. 609 (6/08)

**AUG 1 6 2010**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| **CENTENNIAL SCHOOL DISTRICT** | : | CIVIL ACTION |
| Plaintiff, | : | NO. |
| | : | **10   4129** |
| v. | : | |
| **SEAN D., by and through his parents and natural guardians, Daniel and Lori D.,** | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                              (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                                    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.                        (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                             (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                                (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                                    ( X )

| | | |
|---|---|---|
| 08/16/2010 | Anne E. Hendricks, Esquire | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-938-6378 | 215-938-6375 | ahendricks@levinlegalgroup.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

AUG 16 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CENTENNIAL SCHOOL DISTRICT** : | CIVIL ACTION |
| : | NO. 10 4129 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **SEAN D., by and through his parents and** : | JURY TRIAL DEMANDED |
| **natural guardians, Daniel and Lori D.,** : | |
| : | |
| Defendants. : | |

## COMPLAINT

The Centennial School District (hereinafter the "School District"), by and through its counsel, the Levin Legal Group, P.C., files this Complaint in the Nature of an Appeal from the May 19, 2010, Decision and Order of Pennsylvania Special Education Hearing Officer, Gloria M. Satriale, Esquire (hereinafter "Hearing Officer"), and in support thereof, avers the following:

## PARTIES

1. The Centennial School District is a public school district organized pursuant to the Public School Code of 1949, Act of March 10, 1949, P.L. as amended 24 P.S.§1-101 et seq., and is a Local Educational Agency ("LEA") as defined under the Individuals with Disabilities Act ("IDEA"), 20 USC §1401(19), with its principal offices located in the Eastern District of Pennsylvania at 433 Centennial Road, Warminster, PA.

2. Defendant Sean D. (hereafter "Sean"), was at all times relevant to this litigation a student residing in the Centennial School District, at 125 Fairhill Road, Huntingdon Valley, Pennsylvania 19006.

1

3. Defendants Daniel and Lori D., are the guardians and natural parents of Sean, who reside in the Centennial School District, at 125 Fairhill Road, Huntingdon Valley, Pennsylvania 19006.

## JURISDICTION and VENUE

4. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331. Venue is appropriate as all actions that form the basis of the claim occurred within the geographic boundaries of the United States District Court for the Eastern District of Pennsylvania.

5. Plaintiff has exhausted its administrative remedies as required under 20 U.S.C. § 1415(i), having undergone a due process hearing.

## GENERAL DESCRIPTION OF THE CASE

6. This is an appeal of the Decision and Order of the Hearing Officer in a special education due process hearing completed pursuant to the procedures set forth in the IDEA, and 22 Pa.Code § 14,100, et seq. ("Chapter 14"). The issues in the hearing were: (1) whether the School District violated its child find obligations in failing to evaluate Sean to determine whether he was a student eligible for services under either the IDEA or Section 504 of the Rehabilitation Act ("Section 504); (2) Whether Sean's parents are entitled to an independent educational evaluation ("IEE") at the School District's expense; (3) Whether Sean is eligible for special education and related services under the IDEA; (4) Whether the Section 504 Service Agreement offered by the School District was appropriate; and, (5) whether compensatory education should be awarded to Sean for the time period between January 23, 2007 and January 23, 2009. The Hearing Officer held in favor of Sean and his parents on all issues and awarded compensatory education to Sean. The

School District maintains that it did not violate its child find obligations, that Sean is not eligible under the IDEA, that the Parents are not entitled to an IEE, that the Section 504 Service Agreement offered was appropriate and that Sean should not have been awarded any compensatory education. The School District also asserts that the Hearing Officer who presided over the final hearing session and made the decision should have recused herself as requested by the School District.

**FACTUAL BACKGROUND**

7. Sean's date of birth is July 31, 1990.

8. Sean was in the tenth (10th) grade during the 2006-2007 school year, in the eleventh (11th) grade during the 2007-2008 school year, and in the twelve (12th) grade during the 2008-2009 school year.

9. Sean received homebound instruction during the following time periods between January 27, 2007, and January 27, 2009:

a.   March 6, 2007, through June 15, 2007;

b.   September 24, 2007, through February 28, 2008.

10. During the ninth (9th) grade, Sean was enrolled at Archbishop Wood High School (hereinafter referred to as "Wood."), a private institution.

11. The School District could not "override" the grades issued by Wood to Sean.

12. Sean has not attended school since December 22, 2008, although the School District has made numerous attempts to encourage him to return to school.

13. Sean admits that he stopped attending school at the same time that his juvenile probation sentence ended in December 2008.

14. The School District fulfills its Child Find obligations by publishing notices in the local newspapers regarding special services, by publishing information in its School District calendar about special services, and by publishing pamphlets, which are available in the schools about special services.

15. Since its creation in 2000, the Centennial School District website has contained information as to what steps a parent should take if the parent believes that his/her child is in need of special services. Sean's Parents did not follow these steps.

16. A parent does not have to specifically ask for an evaluation for one to be offered by the School District. If an oral request from an evaluation comes from a parent, then the School District will ask the parent to convert the request to writing so that the written request can proceed through the proper channels.

17. The School District gives parents written procedural safeguards: (1) upon request from a parent; (2) when an initial Permission to Evaluate form is provided to the parent; (3) at an IEP meeting; and (4) when a Notice of Recommended Educational Placement (hereinafter "NOREP") is provided to the parents.

18. Procedural safeguards were never withheld from Sean's Parents by the School District.

19. When Sean registered for the 2006-2007 school year, neither Sean nor his mother told the guidance counselor the reason that Sean had received homebound instruction during the previous school year or that Sean had a history of missing school and why he missed school so often. When Sean registered for the 2006-2007 school year, no evaluation was requested pursuant to the IDEA or Section 504.

20. On September 19, 2006, the School District held a meeting to address Sean's attendance because he had already missed six (6) days of the 2006-2007 school year. At the meeting

on September 19, 2006, it was decided that Sean would be allowed to miss the first two (2) periods of school and come in at the start of the third (3rd) period. At the beginning of the 2006-2007 school year, there was a plan put into place for him to make up the classes that he would be missing during the first (1st) and second (2nd) periods. The plan put into place was that Sean would be given two half-credit courses for the second (2nd) semester and have a complete schedule. Sean's Parents agreed with this plan.

21. During the 2006-2007 school year, Sean's Parents did not make any written requests for Sean to be evaluated to determine if he needed special education or a service plan under Section 504.

22. Sean's Parents allege that Sean qualifies for special education and related services under the IDEA as a result of his medical diagnosis of cyclical vomiting.

23. Although his Parents have alleged that Sean was constantly in the nurses office as a result of his alleged disability, cyclical vomiting, Sean did not visit the School Nurse's Office between January 23, 2007, and January 23, 2009.

24. Information regarding regular and persistent vomiting (Sean's alleged disability) would have been recorded on Sean's school health record if that information had been reported to a school nurse in the School District. There is nothing in Sean's school health record about regular and persistent vomiting.

25. None of the school nurses at William Tennent High School ("Tennent") received phone calls or visits from Sean's mother regarding Sean's vomiting.

26. Neither Sean nor his parents told the guidance counselor about Sean's medical condition during the 2006-2007 school year.

27. Sean's final grades for the 2006-2007 school year took into account both Sean's grades from when he attended school and Sean's grades from when he was receiving homebound instruction.

28. Dr. Endo, Sean's pediatrician, did not examine Sean between March 2007 and November 2007, however he agreed to write homebound notes for Sean whenever requested. Dr. Endo testified that when he wrote the homebound request letters, he would write what he was told to write by Sean's mother.

29. When Sean returned to school for the 2007-2008 school year, his Parents did not request, either orally or in writing, that Sean be evaluated pursuant to the IDEA or Section 504 of the Rehabilitation Act.

30. When Sean was attending school during the first few weeks of the 2007-2008 school year, there was no indication that he needed to be evaluated pursuant to the IDEA or the Section 504.

31. On January 28, 2008, Dr. Endo sent a letter to the School District requesting that Sean receive homebound instruction for the remainder of the 2007-2008 school year.

32. The School District follows the Pennsylvania Department of Education (hereinafter "PDE") guidelines when deciding whether to approve a request for homebound instruction. The PDE guidelines require a note from a doctor that includes: (1) a medical diagnosis for the student; (2) that the student is confined to the home; and (3) the student's confinement is a result of medical diagnosis. The PDE guidelines also state that temporary excusals for homebound instruction may not exceed ninety (90) days.

33. The School District did not accept the January 28, 2008, note from Dr. Endo because it did not contain a specific diagnosis and homebound instruction was requested for too long a period of time.

34. Dr. Endo wanted Sean to see a psychiatrist prior to returning to school in the winter of 2008. The School District did not require Sean to see a psychiatrist, however it agreed to extend Sean's homebound instruction for another thirty days so that Sean could be seen by a psychiatrist.

35. Pursuant to PDE's requirements and a second note submitted by Dr. Endo and accepted by the School District, Sean's last day on homebound instruction during the 2007-2008 school year was to be February 28, 2008.

36. Sean did not return to school on February 29, 2008, as required. The School District repeatedly tried to contact Sean's Parents to arrange a meeting regarding Sean's return to school but it was some time before the Parents responded.

37. A meeting was scheduled on March 3, 2008, by the School District to help Sean transition back to school, however Sean's Parents failed to attend the meeting.

38. Dorothy Henry Satellite School, during the relevant time period was a part of the William Tennent High School. Dorothy Henry Satellite School ("Dot Henry") is for children who need a smaller learning environment. Students with discipline issues are not permitted to attend Dot Henry. Students must apply to attend Dot Henry. Dot Henry does not accept any more than thirty (30) students at a time.

39. In the late winter/early spring of 2008, Sean and his mother completed an application to Dot Henry and then participated in a two day visit, which is part of the application process.

40. With his Parents' permission, Sean began attending Dot Henry in the late-winter of the 2007-2008 school year.

41. When Sean began attending Dot Henry, his Parents did not request any accommodations for Sean and there was no apparent reason for Sean to be evaluated.

42. During the spring of 2008, Sean began missing school. Teachers sent home work for Sean to do but he did not complete the work that was sent home.

43. It was reported to Sean's teacher at Dot Henry, that Sean was socializing with friends during the time period that he was not attending school, in the spring of 2008.

44. Sean was first diagnosed with cyclical vomiting in March of 2008.

45. Sean's Parents first requested a Section 504 evaluation for Sean on March 27, 2008. The School District promptly began the evaluation process however, due to delays in receiving written permission and relevant medical records from Sean's Parents, the School District did not have authority to proceed with the evaluation until May 2008.

46. On May 15, 2008, Dr. Endo once again, submitted a letter requesting homebound instruction for Sean. The School District did not accept Dr. Endo's note dated May 15, 2008, for homebound instruction because it did not contain a diagnosis for Sean and it did not say that homebound instruction was medically necessary.

47. A 504 evaluation meeting for Sean was held on June 11, 2008. In attendance at the 504 meeting were: Sean and his Parents, Dr. Edward Schwartz, one of Sean's doctors, the Principal of Tennent, the Director of Pupil Services, the Supervisor of Special Education, Sean's juvenile probation officer, Sean's teacher at Dot Henry, the School Nurse, the Nursing Supervisor, and the Guidance Counselor.

48. At the 504 meeting, there was a discussion as to whether Sean should have/was eligible for a 504 plan or an Individualized Education Plan ("IEP"), under the IDEA and Chapter 14. The team considered all of the medical notes provided to the School District by Sean's doctors. The Director of Pupil Services made it clear that the School District would evaluate Sean to determine his eligibility for special education pursuant to the IDEA, if that is what his Parents wanted. It was determined, by everyone at the meeting, including Sean's Parents, that a 504 Service Agreement was appropriate at that time and that there was not a need, at that time, for an evaluation to determine if Sean was in need of special education and related services.

49. A 504 Service Agreement was then drafted for Sean and offered by the School District. Sean's Parents never indicated that they did not believe that a 504 plan was appropriate.

50. The 504 Service Agreement contains all of the terms, accommodations, and services that were agreed to by the parties at the meeting on June 11, 2008, and fulfilled all of Sean's current educational needs.

51. The 504 Service Agreement was first implemented at the beginning of the 2008-2009 school year.

52. On October 22, 2008, for the first time, Sean's Parents requested that Sean be evaluated to determine if he was in need of special education and related services. However, they were not giving the School District permission to evaluate Sean, instead, they were seeking an independent educational evaluation ("IEE") paid for by the School District.

53. To date, Sean's Parents have refused to permit the School District to evaluate Sean to determine if he is in need special education and related services.

54. The School District refused to pay for an IEE because it had not yet had the opportunity to evaluate Sean itself.

55. To date, no qualified school psychologist has evaluated Sean to determine if he is in need of special education and related services pursuant to the IDEA and Chapter 14.

56. There is no evaluation report and no document which concludes or even supports that Sean is eligible for special education and related services pursuant to the IDEA and Chapter 14.

57. Sean's Parents have not responded to many of the School District's requests to bring Sean back to school.

58. At all times, the School District has fulfilled all of its legal obligations to Sean and his Parents.

59. Sean is not eligible for special education and related services under the IDEA and/or Chapter 14.

60. Sean's cyclical vomiting does not qualify him for special education and related services under the IDEA and/or Chapter 14.

61. Sean does not qualify as "other health impaired" under the IDEA.

62. Sean is not and never was in need of specially designed instruction.

63. The School District filed a due process complaint on November 19, 2008, as a result of its decision not to fund an IEE.

64. Sean's Parents filed their due process complaint on January 23, 2009. The two due process complaints were then consolidated for purposes of the hearing.

65. Hearing Officer Deborah DeLauro was initially assigned to the case.

66. As a result of a motion to dismiss filed by the School District, on statute of limitations grounds, Hearing Officer Deborah DeLauro limited the claims that could be considered in this matter to those that arose between January 23, 2007, and January 23, 2009.

67. A due process hearing was held over eight sessions between April 23, 2009 and March 5, 2010. The first seven sessions were presided over by Hearing Officer Deborah DeLauro.

68. In January 2010, Hearing Officer Gloria Satriale was assigned to take over this matter as a result of Hearing Officer DeLauro's leave of absence.

69. On January 5, 2010, the School District filed a motion asking Hearing Officer Satriale to recuse herself from this matter. The reasons for the request for recusal included: (a) Hearing Officer Satriale's son is a student in a school district represented by the undersigned; (b) Hearing Officer Satriale has an adversarial relationship with counsel for the School District as a result of her son's education at the other school district represented by the undersigned; (c) there is, at the very least, the potential for an ongoing adversarial relationship between Hearing Officer Satriale and the undersigned; (d) Hearing Officer Satriale has been an advocate for parents of special education students; (e) Hearing Officer Satriale has been in an adversarial relationship with school districts and intermediate units regarding programming for special education students; (f) Hearing Officer Satriale's past and present relationship as Executive Director of the Mission for Educating Children with Autism ("M.E.C.A."), where she again advocates for parents of special education students; (g) Hearing Officer Satriale's relationship with Preparing Adolescents for Adult Life ("PAAL"), again where she is advocating for parents of special education students; and, (h) Hearing Officer Satriale's past and present

11

relationship with the Organization for Autism Research which included setting a goal of raising ten thousand dollars ($10,000.00) in contributions annually.

70. On or about January 8, 2010, Hearing Officer Satriale denied the School District's Motion to Recuse, asserting incorrectly, that she had no interest or relationship with anyone associated with the matter. She then presided over the last hearing session held on March 5, 2010.

71. On May 19, 2010, Hearing Officer Satriale issued her decision in this matter. Her bias against the School District is evident throughout her decision. For example, without any support in the record, Hearing Officer Satriale determined that Sean is eligible for special education and related services under the IDEA. As a result of this uncorroborated, incorrect conclusion, Hearing Officer Satriale ordered the School District to fund an IEE and provide Sean with compensatory education "for the entire period of deprivation in the form of full days for each applicable day of the school calendar from January 23, 2007 to January 23, 2009."

72. Each and every one of Hearing Officer Satriale's conclusions is factually and legally incorrect.

73. Hearing Officer Satriale completely ignored relevant facts and law.

74. The evidence presented in this matter support a finding in favor of the School District and against Sean and his Parents.

75. In accordance with the IDEA, 20 U.S.C. Section 1415(i)(2); 34 CFR Section 300.516(a), having been aggrieved by the findings and decision of the Hearing Officer, the School District hereby requests relief in the form of reversing the decision of the Hearing Officer.

## COUNT I

## (SCHOOL DISTRICT V. SEAN D., et al.)

## APPEAL OF DECISION OF HEARING OFFICER

76. The School District incorporates herein by reference paragraphs 1-75.

77. The Third Circuit in *S.H. v. State-Operated School Dist. of City of Newark,* 336 F.3d 260, 271(3d Cir. 2003), held that on appeal, the appropriate standard of review is a modified *de novo* standard. *Id.* The reviewing court is obliged to conduct a modified *de novo* review, in which it gives "due weight" to the underlying administrative proceedings, unless other non-testimonial, extrinsic evidence in the record would justify a contrary conclusion and/or the record read in its entirety compel a contrary conclusion.

78. In this case, even giving the Hearing Officer due weight it is clear that her decision was erroneous on all issues.

79. In this case, the Hearing Officer committed the following errors of law: (a) Hearing Officer Satriale denied the School District's Motion to Recuse when clearly her adversarial relationship with counsel for the School District and her role as a parent advocate disqualified her from being able to render an unbiased decision; (b) inappropriately determined that the School District had violated its obligations under the child find provisions of the IDEA; (c) inappropriately determined that Sean's Parents are entitled to an IEE at the School District's expense; (d) inappropriately and without any support in the record, determined that Sean is eligible for special education and related services under the IDEA; (e) inappropriately determined that the 504

Service Plan offered by the School District was not appropriate; and (f) ignored the equitable nature of compensatory education and controlling case law and improperly awarded Sean compensatory education for all of the relevant time period, not even taking into consideration the accommodations provided under the 504 plan and the long period of homebound instruction. The School District seeks reversal of the Hearing Officer's decision, in its entirety.

80. Based on the modified *de novo* review standard, the School District believes and therefore avers that based upon the numerous legal errors committed, other non-testimonial, extrinsic evidence in the record would justify a contrary conclusion and/or the record read in its entirety compels a contrary conclusion to the one reached by the Hearing Officer.

**WHEREFORE**, the School District respectfully requests that the May 19, 2010, Decision and Order of the Hearing Officer be reviewed and reversed, that judgment be entered in favor of the School District on all issues, and that Sean D., Daniel D. and Lorie D., be denied all relief requested.

## JURY TRIAL DEMAND

1. Plaintiff demands a jury trial on all claims.

**RELIEF REQUESTED**

The Centennial School District hereby requests the following relief:

1. That the Court assume jurisdiction over this action;

2. That the Court consider the administrative record below, and hear additional evidence as necessary to make an accurate, independent decision on the merits;

3. That the Court reverse the administrative decision of the Hearing Officer;

4. That the Court declare all actions by the School District to be in compliance with the all state and federal law;

5. That the Court order the Defendants to pay the School District its reasonable attorneys' fees and related costs; and

6. That the Court grant such further relief as the Court deems just and proper.

Respectfully submitted,

LEVIN LEGAL GROUP, P.C.

ANNE E. HENDRICKS
Attorney I.D. No. 55904
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA  19006
(215) 938-6378
(215) 938-6375 (fax)
ahendricks@levinlegalgroup.com
Counsel for the Centennial School District

Dated: August 16, 2010