IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CENTENNIAL SCHOOL DISTRICT, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| S.D., by and through his Parents and natural | : | |
| guardians Daniel and Lori D., | : | NO. 10-CV-4129 |
| Defendants. | : | |

**MEMORANDUM**

Defendant/Counter-Plaintiff S.D. has raised various statutory and constitutional challenges to Plaintiff/Counter-Defendant Centennial School District's ("Centennial") alleged failure to provide him with a public education because of his disability. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Centennial seeks to dismiss S.D.'s amended counterclaims. For the following reasons, Centennial's motion is GRANTED in part and DENIED in part.

**I. BACKGROUND**

Twenty-year-old S.D. suffers from asthma and a lifelong gastrointestinal condition that causes nausea and cyclic vomiting. S.D. received homebound instruction between January 27, 2007 and January 27, 2009, and has not attended school since December 22, 2008. On January 23, 2009, S.D.'s parents filed a due process complaint against Centennial claiming S.D. had been denied a Free Appropriate Public Education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq., and § 504 of the Rehabilitation Act ("§ 504"), 29 U.S.C. § 794. Due Process hearings were conducted over eight sessions between April 23, 2009 and March 5, 2010. On May 19, 2010, the Hearing Officer found for S.D.'s parents.

1

See Complaint, Centennial Sch. Dist. v. S.D., No. 10-CV-4129 (E.D. Pa. Aug. 16, 2010) [hereinafter Complaint]; Am. Answer & Countercl., Centennial Sch. Dist. v. S.D., No. 10-CV-4129 (E.D. Pa. Apr. 18, 2011) [hereinafter Answer & Countercl.].

On August 16, 2010, Centennial sought reversal of the May 19, 2010 order, alleging the Hearing Officer was motivated by bias and incorrectly denied Centennial's motion for recusal. See Complaint. S.D. filed an Answer and Counterclaim on November 24, 2010, which it amended on April 18, 2011. See Answer & Countercl. On May 6, 2011, Centennial filed a Motion to Dismiss Counts II through VII of S.D.'s Counterclaims under Rule 12(b)(6). Centennial's Mot. to Dismiss Defendant's Amend. Countercls., Centennial Sch. Dist. v. S.D., No. 10-CV-4129 (E.D. Pa. Apr. 18, 2011) [hereinafter Centennial's Mot. to Dismiss]. S.D. opposed the motion, S.D.'s Opp'n to Centennial's Mot. to Dismiss, Centennial Sch. Dist. v. S.D., No. 10-CV-4129 (E.D. Pa. May 12, 2011) [hereinafter S.D.'s Opp'n], and Centennial replied. Reply Mem. in Support of Mot. to Dismiss, Centennial Sch. Dist. v. S.D., No. 10-CV-4129 (E.D. Pa. May 18, 2011) [hereinafter Centennial's Reply].

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

I must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Byers v. Intuit, Inc., 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted). I need not, however, credit a plaintiff's "threadbare recitals of the elements of a cause of action supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949 (discussing the difference between factual and legal conclusions).

## III. DISCUSSION

### A. Count II: Modify the Compensatory Education Award

Centennial seeks to dismiss Count II, which it interprets to mean S.D. wants to utilize the Hearing Officer's compensatory education award while this appeal is pending. Centennial's Mot. to Dismiss at 3-4. S.D. contends, however, that Count II seeks only to modify his compensatory education award to make him eligible to use it beyond his twenty-first birthday or high school graduation. Answer & Countercl. at 37-38. I agree with S.D.[1]

A person has a statutory right to a FAPE until age twenty-one. See 20 U.S.C. § 1415(a)(1)(A); see also Sch. Dist. of Phila. v. Debra A., No. 08-2924, 2009 WL 778321, at *6 (E.D. Pa. Mar. 24, 2009) ("IDEA seeks to ensure that all children with disabilities have access to FAPE including, when needed, special education related services geared to the unique needs of

---

[1] Count II of S.D.'s counterclaim states, "Counter-Plaintiff/Defendant requests that this Court uphold the compensatory education award of the Hearing Officer and modify S.D.'s eligibility to utilize the award beyond age 21 or high school graduation." Answer & Countercl. at 38. In S.D.'s opposition brief, he states the modification cited in Count II "is for the sole purpose of making the fund available to S.D. at the conclusion of litigation." S.D.'s Opposition at 7-8.

3

the child."). Despite this statutory limitation, courts have equitable power under the IDEA to grant compensatory education beyond the age of twenty-one. Florence v. Carter, 510 U.S. 7, 12 (1993) (equitable relief is appropriate if it furthers the purposes of IDEA); Ferren C. v. Sch. Dist. of Phila., 612 F.3d 712, 718 (3d Cir. 2010) ("[A]n individual over [twenty-one] is still eligible for compensatory education for a School District's failure to provide a FAPE prior to the student turning twenty-one.").

S.D. has adequately stated a claim to modify his compensatory education award, as permitted by the Third Circuit. Accordingly, I will not dismiss Count II.

B.      Counts III and IV: Compensatory Damages based upon § 504 and § 1983

S.D. requests compensatory damages based upon § 504 and 42 U.S.C. § 1983 ("§ 1983"), for Centennial's failure to provide S.D. with an appropriate educational program and placement. In Count III, S.D. requests compensatory damages for the "value of opportunities he was denied," and in Count IV he seeks out-of-pocket expenses and lost wages incurred, and emotional distress suffered by S.D.'s parents. Answer & Countercl. at 38-41. Centennial seeks dismissal, contending Counts III and IV "are really nothing more than alleged violations of FAPE under the IDEA disguised as ADA and/or 504 claims." Centennial's Mot. to Dismiss at 5. It contends "a FAPE violation under the IDEA does not also, in and of itself, constitute a separate discrimination claim under Section 504 . . . ." Id.

Although Counts III and IV properly seek compensatory damages under § 504, they fail to state claims under § 1983.

1. § 504

To establish a claim under § 504, S.D. must show "(1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253 (3d Cir. 1999) (citations omitted). A person is considered "disabled" under § 504 if he or she has a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102 (2006); see 29 U.S.C. § 705(20) (2006) ("individual with a disability" under § 504 means any person with a disability as defined by 42 U.S.C. § 12102). A student is "otherwise qualified" if he is: "(i) of an age during which nonhandicapped persons are provided [with public education], (ii) of any age during which it is mandatory under state law to provide [public education] to handicapped persons, or (iii) to whom a state is required to provide a [FAPE] . . . ." 34 C.F.R. § 104.3(l)(2).

Compensatory damages for a § 504 violation are available, but cannot be awarded when the only harm suffered was a denial of a FAPE under IDEA. Debra A., 2009 WL 778321, at *11 (citing Neena S. ex rel. Robert S. v. Sch. Dist. of Phila., No. 05-5404, 2008 WL 5273546, at *15 (E.D. Pa. Dec. 19, 2008); see N.L. ex rel. Mrs. C. v. Knox Cnty. Sch., 315 F.3d 688 (6th Cir. 2003) (plaintiff must show "something more than a simple failure to provide a [FAPE]"). Instead, the plaintiff must establish that the service was not provided solely because he is disabled. Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007) (no § 504 violation where the County's failure to provide early

5

intervention services to developmentally delayed twins was because the "County misunderstood the concept of natural environment," and not because the twins were disabled); Lauren V. v. Colonial Sch. Dist., No. 07-308, 2007 WL 3085854, at *14 (E.D. Pa. Oct. 22, 2007) (student not entitled to benefits under § 504 because she could not show the school excluded her because of her handicap).

S.D. alleges he suffers from "a lifelong gastrointestinal condition which causes nausea and cyclic vomiting, combined with severe asthma, which decreases vitality and alertness, produces periodic and severe debilitation, and prohibits him from being able to benefit from regular education services." Answer & Countercl. at 4. He claims he is otherwise "qualified for full participation in educational curriculum and related services." Id. at 38. S.D. alleges Centennial receives federal funds. Id. at 39. S.D. also alleges he "has been unable to access or benefit from regular education services solely because of his disability." Id. at 11. S.D. does not recharacterize omissions and failures by Centennial under the IDEA as discrimination. Instead, S.D. alleges his § 504 claim is based on various intentional discriminatory actions taken by Centennial because of S.D.'s disability. Id. at 22-34, 38-40. For example, S.D. states, Centennial excluded him from opportunities available to students in public school, solely on the basis of his disability, including, but not limited to: "(i) participation in the state mandated curriculum areas of art, music, technology, gym, health, languages, or elective enrichment subject areas; (ii) participation in extra-curricular activities; (iii) participation in school provided transportation; [and] (iv) participation in a non-segregated regular education public high school among non-disabled peers; . . . ." Id. at 39.

6

S.D.'s claims of intentional discrimination adequately state a claim for compensatory damages under § 504. See Debra A., 2009 WL 778321, at *11.

2. § 1983

Centennial also argues S.D. has not stated a § 1983 claim because he has failed to allege the deprivation of a federal constitutional right. Instead, it maintains S.D. has asserted only claims based on his rights under IDEA and § 504, which cannot form the basis for relief under § 1983. Centennial's Mot. to Dismiss at 10. I agree.

The threshold issue in a § 1983 case is "whether a plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution." See 42 U.S.C. § 1983; Brown v. Commonwealth of Pa., Dep't of Health Emergency, 318 F.3d 473, 476-77 (3d Cir. 2003). S.D. concedes the Third Circuit "has been reluctant to allow § 1983 damages for violations of the IDEA on the child's behalf," but argues parents are allowed to pursue such claims. S.D.'s Opp'n at 19-20 (citing A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 803, 806 (3d Cir. 2007)).

In A.W., 486 F.3d at 803, 806, the plaintiff alleged the School District deprived him of a FAPE, and sought to hold employees liable under § 1983 for violations of his rights under IDEA and § 504. The Third Circuit held § 1983 is not available to remedy violations of IDEA and rights created under § 504 because both § 504 and IDEA create express, private means of redress. Id.

S.D. argues, however, parents have an actionable claim for their losses under § 1983 because the IDEA does not provide a remedy to redress parents' losses. See Blanchard v. Morton Sch. Dist., 420 F.3d 918 (9th Cir. 2005).

Blanchard, however, fails to support S.D.'s position. The parent in Blanchard sought damages for emotional distress and loss of profits. Id. The court held "only that, because the IDEA provides no remedy for [the parent], she need not exhaust administrative remedies before filing suit." Id. at 922. The district court subsequently found, however, that because the parent's participation in the educational process is dependent upon being the parent of a child receiving IDEA services, "she has no individually enforceable right under the IDEA to support a claim for damages under § 1983." Blanchard v. Morton Sch. Dist., No. 02-5101, 2006 WL 1075222, at *3 (W.D. Wash. Apr. 20, 2006); see Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 186 (3d Cir. 2009) ("compensatory and punitive damages are not an available remedy under the IDEA").

S.D.'s parents seek damages under § 1983 for costs incurred for travel, obtaining various documents, loss of income, and emotional distress, which are akin to the damages rejected in Blanchard, on remand, and in Chambers. S.D.'s argument is meritless, and I will grant Centennial's motion to dismiss the portions of Counts III and IV seeking damages under § 1983.

C. Count V: ADA Claim

S.D. alleges Centennial violated the Americans with Disabilities Act, 42 U.S.C. § 12101, by intentionally excluding him from participation in, or denying him benefits of, services, programs, and activities. Answer & Countercl. at 42. Centennial summarily requests dismissal of S.D.'s ADA claim. Centennial's Mot. to Dismiss at 5-10.

To prove a prima facie case of disability discrimination under the ADA, a plaintiff must establish he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse . . .

action because of that disability." J.C. v. Lakeland Sch. Dist., No. 10-1779, 2011 WL 1327439, at *8 (M.D. Pa. Apr. 5, 2011) (internal citation and quotations omitted). The ADA provides that its "remedies, procedures, and rights" are the same as those available under § 504. 42 U.S.C. § 12133; 28 C.F.R. § 35.103 (the ADA and § 504 apply the same standard); see Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 279 (3d Cir. 1996) (comparing the ADA to § 504).

S.D. alleges he suffers from "a lifelong gastrointestinal condition which causes nausea and cyclic vomiting, combined with severe asthma, which decreases vitality and alertness, produces periodic and severe debilitation, and prohibits him from being able to benefit from regular education services," and he is "otherwise qualified for full participation in educational curriculum and related services." Answer & Countercl. at 4, 38. S.D. also alleges he "has been unable to access or benefit from regular education services solely because of his disability." Id. at 11. S.D. alleges various intentional discriminatory actions taken by Centennial because of his disability. Id. at 22-34, 38-40.

Centennial has not explained its reason for seeking dismissal, and S.D. has adequately stated a claim for damages under § 504. Centennial's Mot. to Dismiss at 5-10; Answer & Countercl. at 42; see discussion supra at § III(B)(1). Accordingly, Centennial's motion is denied.

D.    § 1983 Claims Based on Violations of S.D.'s Substantive Due Process

Centennial argues S.D. failed to state a claim that Centennial can be liable under § 1983 for violating S.D.'s due process rights by: (a) denying him a FAPE (Count VI); and (b) failing to train and, or in the alternative, supervise its employees (Count VII). Centennial's Mot. to

Dismiss at 11-19. I disagree.

1. Denying S.D. a FAPE (Count VI)

In Count VI, S.D. alleges Centennial "failed to provide S.D. with a [FAPE] at all times relevant to this complaint in violation of the IDEA, Section 504, and Section 1983," and "the denial of a FAPE to [S.D.] was a direct result of the District's established policies and practices concerning students with disabilities." Answer & Countercl. at 43.

Section 1983 provides a civil remedy for the violation of a constitutional right, privilege, or immunity by any person acting under color of state law. 42 U.S.C. § 1983. To prove municipality liability, a plaintiff must establish: (1) a deprivation of a constitutionally protected right; (2) resulting from a policy, practice, or custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). Municipal liability cannot be predicated on a respondeat superior theory. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004); Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

First, I must determine "whether the plaintiff has been deprived of a right secured by the Constitution and laws." Baker v. McCollan, 443 U.S. 137, 140 (1979) (internal quotations omitted). Here, the right asserted by S.D. is the right to substantive due process under the Fourteenth Amendment.[2] To state a substantive due process claim, "a plaintiff must [show] the

---

[2] S.D. briefly argues in his response to Centennial's motion to dismiss that he can raise a § 1983 claim for denial of equal protection. S.D.'s Opposition at 24-25; see J.C., 2011 WL 1327439, at *8. "To bring a successful claim under 42 U.S.C. § 1983 for denial of equal protection, plaintiff[] must prove the existence of purposeful discrimination." Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990). The plaintiff must also allege that he "'received

particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (citation omitted); Evans v. Sec'y Pa. Dept. of Corrections, No. 09-2657, 2011 WL 1833237, at *6 (3d Cir. May 16, 2011). Deprivation of a protected interest can "shock the conscience" if a municipality is deliberately indifferent. Evans, 2011 WL 1833237, at *7 (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 850 (1998)) (explaining the continuum of behavior that satisfies the conscience-shocking standard, which ranges from intentional to negligent conduct); Luzerne, 372 F.3d at 580 ("A plaintiff can establish causation by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences.").

The mere denial of a FAPE, absent more, does not give rise to a substantive due process violation because "[p]ublic education is not a 'right' granted to individuals by the Constitution." Plyler v. Doe, 457 U.S. 202, 221 (1982) (citing San Antonio Independent Sch. Dist. v. Rodriguez, 411 U.S. 1, 35 (1973)); M.M. v. Tredyffrin Sch. Dist., No. 06-1966, 2006 WL 2561242, at *12 (E.D. Pa. Sept. 1, 2006); Kevin M. v. Bristol Township Sch. Dist., No. 00-6030, 2002 WL 73233, at *8 (E.D. Pa. Jan. 16, 2002) (substantive due process claim cannot be based

---

different treatment from that received by other individuals similarly situated.'" Id. (quoting Kuhar v. Greensburg–Salem Sch. Dist., 616 F.2d 676, 677 n. 1 (3d Cir.1980)).
    S.D. fails to allege an equal protection violation anywhere in his Amended Counterclaim or in any other submissions – aside from the brief reference in his response to the motion to dismiss. That reference is a conclusory statement that I need not credit. Iqbal, 129 S. Ct. at 1949.

on the denial of FAPE); see Goss v. Lopez, 419 U.S. 565, 565-66, 574-75 (1975) (once a school extends the right to a public education, the Due Process Clause requires the school to protect the student from being suspended or excluded from school for misconduct without minimum procedures).

The Third Circuit, however, has suggested the denial of a FAPE could be the basis of a substantive due process claim if the plaintiff identifies "policies or customs of the School District on the basis of which a reasonable finder of fact could premise liability." Chambers, 587 F.3d at 193-94 (mere allegations that the School District had a policy of ignoring its responsibilities imposed by the IDEA, without identifying any actual policies or customs, were insufficient at summary judgment to establish liability); see K.R. v. Sch. Dist. of Phila., No. 06-2388, 2007 WL 2726236, at *1-3 (E.D. Pa. Sept. 14, 2007) (in addition to a FAPE claim, assault allegations and claims involving the School District's alleged failure to provide a safe environment for the student were sufficient to survive a motion to dismiss); cf. Ridgewood, 173 F.3d at 252 (granting summary judgment for the School District on student's § 1983 claim because student failed to show the School District's policy was to ignore its responsibilities under the IDEA).

Second, I must determine whether Centennial's policies, practices, or customs caused the deprivation of a FAPE, or whether Centennial, with deliberate indifference[3] to the consequences,

---

[3] This standard was originally used for suits alleging a failure to train police officers, but has been extended to other municipal policy or custom liability cases, Pelzer v. City of Phila., 656 F. Supp. 2d 517, 533 n.26 (E.D. Pa. 2009), and failure to supervise cases, Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Deliberate indifference is a "'deliberate choice to follow a course of action [that] is made from various alternatives' without regard to the known or obvious

established and maintained a policy, practice, or custom which directly caused the violation. See
Monell, 436 U.S. at 691-94; Hogan v. City of Easton, No. 04-759, 2006 WL 3702637, at *8-9
(E.D. Pa. Dec. 12, 2006) ("to sustain a § 1983 action against the City, the [plaintiff] must simply
establish 'a municipal custom coupled with causation, i.e., that policymakers were aware of
similar unlawful conduct in the past, but failed to take precautions against future violations, and
that this failure, at least in part, led to their injury.'") (internal citation omitted).

To show deliberate indifference, the plaintiff must first identify a policy[4] or custom[5] that
caused the alleged constitutional violation. Luzerne, 372 F.3d at 580; see Oklahoma City v.
Tuttle, 471 U.S. 808, 823-24 (1985) ("But where the policy relied upon is not itself
unconstitutional, considerably more proof than the single incident will be necessary in every case
to establish both the requisite fault on the part of the municipality, and the causal connection
between the policy and the constitutional deprivation.") (internal quotations omitted). Plaintiff
must then establish the municipality acted deliberately and was the "moving force behind the
injury alleged." Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (citations and

---

consequences." Pelzer, 656 F. Supp. 2d at 532-33 (quoting Harris, 489 U.S. at 389) (citations omitted).

[4] "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (alteration, internal quotation marks and citation omitted).

[5] Customs are "practices of state officials so permanent and well settled as to virtually constitute law." Id.

internal quotation marks omitted). "If . . . the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences." Id.

S.D. alleges the following three policies had the effect of substantively denying him an education: (1) not providing special education services to students with medical disabilities; (2) maintaining a separate segregated school for problem students and forbidding the implementation of IEPs there; and (3) conducting § 504 evaluations without the use of any assessment tools or participation of trained individuals. Answer & Countercl. at 43-44. S.D. alleges the denial of a FAPE "was a direct result of the District's established policies and practices concerning students with disabilities," and "the District knowingly and intentionally ignored their obligations to provide S.D. with the programming and services he was entitled to." Id. at 43. Although S.D. has not made extensive allegations regarding causation, my inquiry under Rule 12(b)(6) is to determine only whether S.D. pled sufficient factual content to allow me to draw a reasonable inference that either Centennial's policies are themselves unconstitutional or Centennial was deliberately indifferent to its responsibilities under the IDEA and § 504. Iqbal, 129 S. Ct. at 1949.[6]

S.D. pled sufficient facts to support a reasonable inference that Centennial's policies

---

[6] S.D., of course, will face a heightened burden after discovery. See Chambers, 587 F.3d at 194 (substantive due process claim could not survive summary judgment where the record did not support a finding that the School District's policy was to ignore the responsibilities imposed by the IDEA).

caused a deprivation of his substantive due process rights. S.D. alleges, for example, Centennial: repeatedly informed his parents that he was not entitled to services, programming, or evaluation; failed to provide IDEA-mandated information to S.D.'s parents; refused to provide homebound instruction to S.D.; unilaterally placed S.D. in a youth alternative placement without following due process procedures; and requested a full waiver of S.D.'s rights and S.D.'s agreement to a District-drafted § 504 plan. Answer & Countercl. at 3-9. Based on these allegations, I find that S.D. has sufficiently pled a § 1983 claim, and Centennial's motion to dismiss Count VI is denied.

2.  Failure to Train or, in the Alternative, to Supervise (Count VII)

In Count VII, S.D. alleges the same policies at issue in Count VI resulted in a denial of his "educational programming and accommodations," and that Centennial's "failure to supervise and provide preventive or remedial measures amounts to deliberate indifference" that "directly and proximately caused the deprivation" he suffered. Answer & Countercl. at 44-45. Centennial argues -- correctly -- there is no "legal basis for a failure to train and/or supervise claim" under the IDEA or § 504. Centennial's Mot. to Dismiss at 17. A fair reading of S.D.'s complaint, however, alleges a § 1983 claim based on failure to train or, in the alternative, to supervise. Centennial's Mot. to Dismiss at 17-19; S.D.'s Opp'n at 26-29. S.D.'s § 1983 claim survives dismissal under Rule 12(b)(6).

To the extent S.D. alleges a deprivation of his IDEA or § 504 rights as a basis of a § 1983 violation, his claim must be dismissed. Discussion supra at § III(B)(2); A.W., 486 F.3d at 803, 806. Nevertheless, S.D. adequately states a claim that Centennial violated his due process rights

15

under § 1983 based on failure to train or, in the alternative, to supervise. K.R. v. Sch. Dist. of Phila., No. 06-2388, 2007 WL 2726236, at *3 (E.D. Pa. Sept. 14, 2007) (noting A.W. mandates dismissal of § 1983 claims based on violation of the IDEA, not § 1983 claims based on violation of constitutional rights).

A municipality's failure to properly train or supervise its employees constitutes a violation under § 1983 if the plaintiff establishes: "(1) the municipality had a policy or custom that deprived him of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom." Pelzer, 656 F. Supp. 2d at 531-32 (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997) (citations omitted)); see Harris, 489 U.S. at 388 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004); Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999).

S.D. alleges Centennial's failure to properly "supervise and provide preventive or remedial measures amount[ed] to deliberate indifference," and Centennial "could have prevented the denial of education to S.D. by exercise of reasonable diligence, training, and monitoring of the staff by the District." Answer & Countercl. at 45. S.D. argues, "When the District evaluated [S.D.], it employed no measurements, and the individuals making the determinations had no training. The evaluation was foreseeably useless." S.D.'s Opp'n at 28. These facts adequately state a claim that Centennial violated his substantive due process rights based on a failure to train or, in the alternative, to supervise pursuant to § 1983. See Koehler ex rel. Koehler v. Juniata

Cnty. Sch. Dist., No. 07-0117, 2008 WL 1787632, at *12-13 (M.D. Pa. Apr. 17, 2008); K.R. v. Sch. Dist. of Phila., No. 06-2388, 2007 WL 2726236, at *3 (E.D. Pa. Sept. 14, 2007).

Centennial argues the "causal connection between [Centennial's] alleged failure to train and S.D.'s alleged deprivation of his substantive due process rights is missing." Centennial's Mot. to Dismiss at 19-20. In addition to asserting causation in his counterclaim, S.D. pled sufficient facts to allow a reasonable inference that Centennial's deliberate indifference caused a deprivation of his substantive due process rights. Iqbal, 129 S. Ct. at 1949; see discussion supra at § III(D)(1).

An appropriate order follows:

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CENTENNIAL SCHOOL DISTRICT, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| S.D., by and through his Parents and natural | : | |
| guardians Daniel and Lori D., | : | NO. 10-CV-4129 |
|     Defendants. | : | |

## ORDER

And now, this 17th day of June, 2011, upon consideration of Plaintiff's Motion to Dismiss the Amended Answer and Counterclaim (Doc. No. 21), Defendant's Response in Opposition to Plaintiff's Motion to Dismiss (Doc. No. 23), and Plaintiff's Reply Brief (Doc. No. 25), it is hereby ORDERED that:

1. Plaintiff Centennial School District's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 21) is **DENIED** as to Counts II, V, VI, VII, and as to Counts III and IV insofar as those Counts request compensatory damages based upon § 504. The motion is **GRANTED** as to Counts III and IV only insofar as those counts seek relief under § 1983.

BY THE COURT:

/s/ Timothy R. Rice
HONORABLE TIMOTHY R. RICE
United States Magistrate Judge
